B1040 (FORM 1040) (12/24)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br><br>- The State of Arizona, *ex rel.* Kristin K. Mayes, the Attorney General;<br>- State of Colorado;<br>- State of Connecticut;<br>- District of Columbia, Office of the Attorney General;<br>- State of Florida, Office of the Attorney General, Department of Legal Affairs;<br>- Office of the Illinois Attorney General;<br>- The State of Kansas, *ex rel.* Kris Kobach;<br>- The Commonwealth of Kentucky, *ex rel.* Russell Coleman, Attorney General;<br>- State of Louisiana;<br>- State of Maine;<br>- Michigan Attorney General, *ex rel.* the People of the State of Michigan;<br>- State of Minnesota, by its Attorney General, Keith Ellison;<br>- State of Missouri, Andrew Bailey, Attorney General;<br>- New Hampshire Office of the Attorney General, Consumer Protection Division;<br>- New Mexico Department of Justice;<br>- New York State Attorney General's Office;<br>- State of North Carolina;<br>- State of Oklahoma;<br>- The State of Oregon, by and through its Attorney General Dan Rayfield;<br>- The Commonwealth of Pennsylvania;<br>- The State of South Carolina *ex rel.* Alan Wilson, in his official capacity as Attorney General of the State of South Carolina;<br>- The Attorney General for the State of South Dakota;<br>- State of Utah, Office of the Utah Attorney General;<br>- State of Vermont;<br>- The Commonwealth of Virginia, *ex rel.* Jason S. Miyares, Attorney General;<br>- The State of Washington;<br>- Office of the West Virginia Attorney General;<br>- The State of Wisconsin. | **DEFENDANTS**<br><br>23ANDME HOLDING CO.;<br>23ANDME, INC. |
| *[Remainder of Page Intentionally Left Blank]* | *[Attorneys for the Parties Starts on the Following Page]* |

B1040 (FORM 1040) (12/24)

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If known) |
|---|---|
| *Counsel to the NAAG Client States*[1]<br>Abigail R. Ryan<br>BANKRUPTCY COUNSEL<br>NATIONAL ASSOCIATION OF ATTORNEYS GENERAL<br>1850 M Street NW, 12th Floor<br>Washington, DC 20036<br>Telephone: (202) 326-6000, Ext. 258<br><br>*Counsel to the State of Colorado*<br>Robert Padjen, NO. 14678CO<br>SENIOR ASSISTANT ATTORNEY GENERAL COLORADO<br>DEPARTMENT OF LAW<br>RALPH L. CARR COLORADO JUDICIAL CENTER<br>1300 Broadway, 8th Floor<br>Denver, Colorado 80203<br>Direct dial: 720-508-6346<br><br>*Counsel to the Commonwealth of Kentucky*<br>Christopher D. Hunt (KY Bar No. 91775)<br>ASSISTANT ATTORNEY GENERAL<br>KENTUCKY OFFICE OF THE ATTORNEY GENERAL<br>1024 Capital Center Drive, Suite 200<br>Frankfort, KY 40601<br>Tel: (502) 696-5691<br><br>*Counsel for the State of Minnesota*<br>Dalila Z. Jordan, Attorney Reg # 0403120<br>ASSISTANT ATTORNEY GENERAL<br>CONSUMER PROTECTION DIVISION<br>445 Minnesota Street, Suite 600<br>Saint Paul, Minnesota 55101<br>Telephone: (651) 300-7640<br><br><br>(Counsel Continued on Next Page) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY  10019<br>Phone: 212.373.3000<br>Fax: 212.757.3990<br>Paul M. Basta<br>Christopher Hopkins<br>Jessica I. Choi<br>Grace C. Hotz<br><br>Carmody MacDonald P.C.<br>120 S. Central Ave.<br>Suite 1800<br>St. Louis, MO  63105<br>Phone: 314.854.8600<br>Fax: 314.854.8660<br>Thomas H. Riske<br>Nathan R. Wallace<br>Jackson J. Gilkey |

---

[1] NAAG Client States include: The State of Arizona, *ex rel.* Kristin K. Mayes, the Attorney General; State of Connecticut; District of Columbia, Office of the Attorney General; State of Florida, Office of the Attorney General, Department of Legal Affairs; Office of the Illinois Attorney General; The State of Kansas, *ex rel.* Kris Kobach; State of Louisiana; State of Maine; Michigan Attorney General, *ex rel.* the People of the State of Michigan; New Hampshire Office of the Attorney General, Consumer Protection Division; New Mexico Department of Justice; New York State Attorney General's Office; State of North Carolina; State of Oklahoma; The State of South Carolina *ex rel.* Alan Wilson, in his official capacity as Attorney General of the State of South Carolina; State of Utah, Office of the Utah Attorney General; State of Vermont; The Commonwealth of Virginia, *ex rel.* Jason S. Miyares, Attorney General; The State of Washington; Office of the West Virginia Attorney General; and The State of Wisconsin.

| | |
|---|---|
| *Counsel for the State of Missouri*<br>Caleb M. Lewis, Mo. Bar #61894<br>    ASSISTANT ATTORNEY GENERAL<br>Michael Schwalbert, Mo. Bar #63119<br>    ASSISTANT ATTORNEY GENERAL<br>Alison Esbeck, Mo. Bar. #58501<br>    ASSISTANT ATTORNEY GENERAL<br>Zachary Elam, Mo. Bar #76935<br>    ASSISTANT ATTORNEY GENERAL<br>MISSOURI ATTORNEY GENERAL'S OFFICE<br>815 Olive Street Suite 200<br>St. Louis, MO 63101<br>(314) 340-7883<br><br>*Counsel for the State of Oregon*<br>Justin D. Leonard, E.D. Mo. D.C. # 033736OR<br>SENIOR ASSISTANT ATTORNEY GENERAL<br>OREGON DEPARTMENT OF JUSTICE<br>1162 Court Street NE<br>Salem, Oregon 97301-4096<br>Telephone: (503) 378-4400<br><br>*Counsel for the Commonwealth of Pennsylvania*<br>Lauren A. Michaels<br>DEPUTY ATTORNEY GENERAL<br>Pa I.D. No. 320686<br>Melissa L. Van Eck<br>CHIEF DEPUTY ATTORNEY GENERAL FINANCIAL ENFORCEMENT SECTION<br>COMMONWEALTH OF PENNSYLVANIA<br>Office of Attorney General<br>1251 Waterfront Place<br>Mezzanine Level<br>Pittsburgh, Pa 15222<br>Tel: (412) 235-9072 | |
| **PARTY** (Check One Box Only)<br>☐ Debtor         ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       X Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>X Debtor         ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor       ☐ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>The States have commenced this adversary proceeding pursuant to FRBP 7001(2) & (9), seeking declaratory judgment under 28 U.S.C. § 2201 regarding the validity and extent of the Debtors' interest in each customers' genetic material and related data – including whether the Debtors have the right to sell and transfer it to any buyer without first obtaining express and informed consent from each customer. See Exhibit A to the Complaint for a list of the states' statutes involved.<br>This cause of action also involves the following federal statutes: 11 U.S.C. §§ 363, 541; 28 U.S.C. §959(b). | |

B1040 (FORM 1040) (12/24)

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☑ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>23ANDME HOLDING CO., *et al.*[2] | BANKRUPTCY CASE NO.<br>Case No. 25-40976-357 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Missouri | DIVISION OFFICE<br>Eastern Division | NAME OF JUDGE<br>Hon. Brian C. Walsh |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

---

[2] A complete list of Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is: 870 Market Street, Room 415, San Francisco, CA 94102.

**B1040 (FORM 1040) (12/24)**

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| *[signature: A. Ryan]* | |
| **DATE** <br><br> June 9, 2025 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br><br> Abigail R. Ryan |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re: § <br> § <br> 23ANDMEHOLDING CO., *et al.*,[1] § <br> Debtors. § <br> ----------------------------------------------------------- § <br> The State of Arizona, *ex rel.* Kristin K. Mayes, the § <br> Attorney General; State of Colorado; State of § <br> Connecticut; District of Columbia, Office of the § <br> Attorney General; State of Florida, Office of the § <br> Attorney General, Department of Legal Affairs; § <br> Office of the Illinois Attorney General; The State § <br> of Kansas, *ex rel.* Kris Kobach; The § <br> Commonwealth of Kentucky, *ex rel.* Russell § <br> Coleman, Attorney General; State of Louisiana; § <br> State of Maine; Michigan Attorney General, *ex* § <br> *rel.* the People of the State of Michigan; State of § <br> Minnesota, by its Attorney General, Keith § <br> Ellison; State of Missouri, Andrew Bailey, § <br> Attorney General; New Hampshire Office of the § <br> Attorney General, Consumer Protection Division; § <br> New Mexico Department of Justice; New York § <br> State Attorney General's Office; State of North § <br> Carolina; State of Oklahoma; The State of § <br> Oregon, by and through its Attorney General Dan § <br> Rayfield; The Commonwealth of Pennsylvania; § <br> State of South Carolina *ex rel*. Alan Wilson, in his § <br> official capacity as Attorney General of the State § <br> of South Carolina; The Attorney General for the § <br> State of South Dakota; State of Utah, Office of the § <br> Utah Attorney General; State of Vermont; The § <br> Commonwealth of Virginia, *ex rel.* Jason S. § <br> Miyares, Attorney General; The State of § <br> Washington; Office of the West § <br> Virginia Attorney General; The State of § <br> Wisconsin, Plaintiffs, § <br> v. § <br> § <br> 23ANDME HOLDING CO. and 23ANDME § <br> INC., § <br> Defendants. § | Chapter 11 <br><br> Case No. 25-40976 <br><br> (Jointly Administered) <br><br><br> Hon. Brian C. Walsh <br> U.S. Bankruptcy Judge <br><br><br> **Adversary No.** _____ |

---

[1] A complete list of Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/23andMe. The Debtors' service address for purposes of these chapter 11 cases is:  870 Market Street, Room 415, San Francisco, CA 94102.

---

**COMPLAINT**  PAGE 1

## THE STATES' COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE BRIAN C. WALSH,
UNITED STATES BANKRUPTCY JUDGE:

### I.  JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of Missouri[2] has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1), (b)(2)(A), and (O).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Federal Rule of Bankruptcy Procedure ("**FRBP**") 7008, the States consent to the entry of a final order by the Court in connection with this adversary proceeding.

### II.  BASIS FOR RELIEF

4. The States have commenced this adversary proceeding pursuant to FRBP 7001(b) & (i), seeking declaratory judgment under 28 U.S.C. § 2201 regarding the validity and extent of the Debtors' interest in each customers' genetic material and related data – including whether the Debtors have the right to sell and transfer it to any buyer without first obtaining express and informed consent from each customer.

### III.  PARTIES

5. The Plaintiffs are the states captioned above, acting pursuant to statutory authority to enforce data privacy and consumer protection laws on behalf of their citizens.

6. The Defendants, 23andMe Holding Co. and 23andMe, Inc. (together "**23andMe**"), are each corporations organized under the laws of the State of Delaware. Plaintiffs understand that they are the Debtors in Possession in the above-captioned bankruptcy case that hold and are purporting to transfer the genetic material and related data in this case.

---

[2] Hereinafter, the "Court."

**COMPLAINT**  **PAGE 2**

## IV.    BACKGROUND

A. *The Business*

7.      23andMe is a California-based[3] biotechnology company that specializes in the collection and monetization of human genetic data. 23andMe collects this data from consumers through the sale of at-home genetic tests, that can be used to determine ancestry information, lineal descent, and the presence of risk factors for certain diseases.[4]

B. *The Personal Data Subject to Sale*

8.      23andMe collects and maintains a vast amount of sensitive personal information about consumers:

   a. 23andMe obtains "**Profile Data**" from consumers, including their name, date of birth, birth sex, current gender, relationship labels (whether they identify themselves as male or female), and contact information.[5]

   b. 23andMe also solicits "**Family Tree Data**" by asking users to input information about their relatives, who may or may not be 23andMe users.[6]

   c. 23andMe also collects and links additional forms of "**Phenotype Data**" – each individual customer's personal data and health information as collected through initial and supplemental surveys, research participation, and uploaded medical records.[7] Phenotype data represents the observable characteristics of an individual – the physical expression of that individual's genes, their genotype.

9.      Most significantly, 23andMe collects and analyzes biological samples from

---

[3] Dkt. No. 1 the Petition for 23andMe Holding Co. at number 4.
[4] Dkt. No. 32 at paras. 26-32.
[5] *See* https://customercare.23andme.com/hc/en-us/articles/360004944654-What-s-In-Your-Account-Settings
[6] *See* https://customercare.23andme.com/hc/en-us/articles/360036068393-The-23andMe-Family-Tree-Feature
[7] *See* https://customercare.23andme.com/hc/en-us/articles/212873367-Updating-Your-Personal-Information-with-23andMe-Name-Sex-Date-of-Birth

**COMPLAINT**                                                                                    **PAGE 3**

consumers in order to sequence their genome for the consumer, creating "**Genotype Data**."[8] This record of a human's raw genetic code is then kept as a .csv file linked to the user's profile. 23andMe has collected Genotype Data from more than 15 million people.[9] 23andMe analyzes this raw genetic information to provide insights about an individual's ancestry, including the likely regions of origin of their forebears.[10] 23andMe also analyzes their customers' genomes to determine the presence of genetic risk factors for diseases.

10. Accordingly, 23andMe holds – and is proposing to sell to a third-party – an unprecedented compilation of highly sensitive and immutable personal data: a human being's permanent and everlasting genetic identity (their genome). Each individual's information is conjoined with their phenotype data (how their genome has manifest itself physically/mentally) and other sensitive personal information, including the individual's family tree and contact information.

11. Virtually all of this personal information is immutable. *If stolen or misused, it cannot be changed or replaced*. Furthermore, this data is exclusively personal and unique, representing that customer's identity and no other human being.

12. In addition, this exclusively personal data carries with it significant, sensitive information about others who share DNA and/or familial relationships. For example, this data can be used to identify and track those who are related to the 23andMe consumer – including future generations yet unborn. In other words, the magnitude of the data in this proposed sale stretches far beyond the 23andMe consumers, impacting those who have no awareness of the sale as well as humans who do not even exist yet.

---

[8] Dkt. No. 32 at paras. 26-32.
[9] Dkt. No. 32 at paras. 2-3, 19.
[10] Dkt. No. 32 at para. 26, 28, and 31.

---

**COMPLAINT**                                                                                         **PAGE 4**

13. Perhaps most incredible of these characteristics, a customer's genome is effectively eternal when preserved in this form. The customer's genome could remain in existence in corporate hands and subject to use (ranging from research to cloning) long after future generations of the 23andMe's consumer have passed away.

C. *The Appliable Bankruptcy Laws*

14. Under applicable bankruptcy law, it is a "…fundamental bankruptcy principle that the estate succeeds to whatever property the debtor possessed outside of bankruptcy[,]"[11] and while federal bankruptcy law defines what is property of the bankruptcy estate; it is state law that defines the extent of the estate's interest in the property.[12]

15. Property of the estate is defined as the debtor's legal or equitable interest in property at the commencement of the estate – "To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate."[13]

16. Section 541(c)(1) does not change this fundamental principle. Section 541(c)(1) "governs what is property of the estate; it does not address what a [debtor] is allowed to do with that property."[14] In other words, any limitations on transfer of property prepetition, remain intact once the bankruptcy is filed.

17. Likewise, as recognized by the Eighth Circuit, 11 U.S.C. § 363 does not expand 23andMe's interest in property. Section 363(b)(1) is an enabling statute that gives debtors "the authority to sell or dispose of property if the debtors would have had the same right under state

---

[11] *Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 193 B.R. 722, 729 (D.N.J. 1996), *aff'd*, 124 F.3d 487 (3d Cir. 1997)
[12] *See Stellwagen v. Clum*, 245 U.S. 605, 613 (1918); *Butner v. United States*, 440 U.S. 48, 54 (1979).
[13] *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) (citing *In re Balay*, 113 B.R. 429, 445 (Bankr. N.D. Ill. 1990) (quoting 4 Collier on Bankruptcy P 541.06 (15th ed. 1989)).
[14] *In re Paul*, 355 B.R. 64, 67 (Bankr. N.D. IL 2001); *See In re Crossman*, 259 B.R. 301 (Bankr. N.D. Ill. 2001).

law."[15] Section 363(f)(1) only allows the sale of property if nonbankruptcy law would permit the sale.[16]

18.  Finally, 28 U.S.C. § 959(b) requires that debtors operate in accordance with state law, including the statutory and common law rights of consumers.

19.  In this case, state law limitations and restrictions on the debtor's right to sell its customer's personal and genetic data prepetition, including states' requirements regarding the consumer's informed consent to any sale, apply to property of the estate.

20.  Accordingly, the States bring this Complaint seeking a declaratory judgment to determine whether and to what extent 23andMe has the right to sell and transfer to a third-party such intimate customer data without first obtaining the express informed consent of its customers.

### V.  COUNT I (Declaratory Judgment):

21.  The States incorporate by reference all preceding paragraphs, as if specifically asserted herein.

22.  The States request that, under FRBP 7001(2) & (9) and 28 U.S.C. § 2201, the Court determine the validity and extent of the Debtors' interest in each customers' genetic material and related data – including by determining and declaring judgment as follows:

   A.  23andMe's customers have inherent common law rights of ownership or control[17] in (a) their biological material (*i.e.,* their spit);[18] (b) their

---

[15] *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987); *See In re Paul*, 355 B.R. 64, 68 (Bankr. N.D. Ill. 2001).
[16] 11 U.S.C. § 363(f).
[17] Courts are still grappling with how to describe and account for such rights, including through the legal lenses of property, privacy, confidentiality, dignity, comparative justice, family cohesion, bioethics, and philosophy, among others. *See, e.g.,* Natalie Ram, DNA by the Entirety, 115 Colum. L. Rev. 873, 892–93 (2015) (arguing that the developing common law rights of ownership, privacy, and control in genetic data should factor in the rights of family members).
[18] *See, e.g., Echt v. Superior Court*, 20 Cal. Rptr. 2d 275, 281 (Ct. App. 1993) (holding that a sperm donor has an interest in his stored semen not "governed by the general law of personal property" but that it was "an interest, in the

      Genotype Data (*i.e.,* their DNA code, which may include their entire genome); and (c) their personal information, including Profile Data (including their name, date of birth, birth sex, their reported gender, and contact information), Family Tree Data, and Phenotype Data (altogether "**Genotype and Phenotype Data**");[19]

  B. 23andMe lacks sufficient rights to control and transfer a customer's biological material and their Genotype and Phenotype Data to a third party <u>absent the customer's express, informed, affirmative consent to the proposed sale/transfer</u> based on customers' inherent right of ownership and control in this Genotype and Phenotype Data.[20]

  C. Furthermore, state-specific criminal statutes[21] or genetic data privacy statutes[22] supplement these inherent rights by requiring that 23andMe obtain <u>express, informed, affirmative consent</u> from consumers[23] prior to the sale or transfer of genetic data.[24]

---

nature of ownership, to the extent that he had decision making authority as to the sperm within the scope of the policy set by law").

[19] Certainly, an individual's interest in these items is not absolute and remains subject to various exceptions as recognized in common law and statutes, including for governmental purposes such as law enforcement, determination of paternity, and screening of newborns as required by state or federal law.

[20] Indeed, 23andMe recognizes that their customers have inherent common law rights, assuring all customers, wherever they live, that their data belongs to them and that they will remain in control of their data – including the right to delete all of it at any time.

[21] For example, Florida's "Protecting DNA Privacy Act" requires "express consent" to sell or otherwise transfer another person's DNA sample or the results of another person's DNA analysis to a third party, regardless of whether the DNA sample was originally collected, retained or analyzed with express consent. Violations are subject to criminal prosecution, up to a second-degree felony. Fla. Stat. §§ 817.5655(5); 775.082(d); 775.083(1)(b) (2024).

[22] *See, e.g.,* Ariz. Rev. Stat § 44-8002(A)(2)(b)(i); Colorado Privacy Act, Colo. Rev. Stat. § 6-1-1308(7) & 4 CCR 904-3, Rules 6.10 7.02-7.05; Fla. Stat. § 817.5655(5) (2024); N.H. Rev.Stat.Ann. 141-H:2, III; Tex. Bus. & Comm. Code § 503A.001(5); Utah Code § 13-60-104(1)(c)(i)-(ii); Wash. Rev. Code Ann. § 19.373.070(1) (2024).

[23] The aforementioned statutes should apply to current residents of each state as well as those consumers who no longer reside in the respective state but who did at the time they shared their genetic information with 23andMe.

[24] *See* Exhibit A for a list of implicated states' laws. The following are listed as examples:
  In Texas, the Texas Direct-to-Consumer Genetic Testing Act specifically regulates companies like 23andMe and provides consumers with certain rights and protections over their biological samples and genetic data.

---

**COMPLAINT**                               **PAGE 7**

      D.      Regardless of the forgoing, 23andMe must honor its representations to consumers by requiring "explicit consent" to the proposed sale based on its "Privacy" webpage, which assures customers that their DNA and health insights, entrusted with 23andMe, will be protected. In its very first bullet point "assurance," the Privacy page states that "You can be assured that your genetic data **will not be shared** with employers, insurance companies, or public databases without your explicit consent."[25] Based on this, customers have a reasonable expectation that their genetic data would not be auctioned off and shared with the highest bidder without explicit consent.

      E.      Notwithstanding all of the above, to the extent that the Court should determine that any customer's "click-through" acceptance of 23andMe's

---

*See* Tex. Bus. & Com. Code §§ 503A.001-.008. Under the Act, Texans have an exclusive property right in, and right to exercise exclusive control over, their biological sample and genetic data. *Id*. § 503A.003. Therefore, Debtors must obtain Texans' *separate* express consent to (a) transfer or disclose the individual's genetic data to any person other than the company's vendors and service providers; (b) use genetic data for a purpose other than the primary purpose of the company's genetic testing product or service; or (c) retain the biological sample following completion of the initial testing service. *Id*. § 503A.006(a)(1). Consent requires a separate "affirmative response to a clear and meaningful notice regarding the collection, use, or disclosure of genetic data for a specific purpose." *Id*. § 503A.001(5). The consumer's original click-through acceptance of 23andMe's Terms of Service and Privacy Statement upon signing up for services would not meet the *separate* express consent requirement as defined by the DTC Genetic Testing Act. (The Texas Data Privacy and Security Act (the "TDPSA") would also prohibit transfer absent informed consent as to a particular transfer to a particular buyer. *See* Tex. Bus. & Com. Code § 541.)

      Arizona law similarly requires direct-to-consumer genetic testing companies to obtain separate express consent from the consumer for the specific purpose of transferring or disclosing the consumer's genetic data to a buyer. Ariz. Rev. Stat. §§ 44-8001(5), 44-8002(A)(2)(b)(i). Furthermore, under Arizona law, the genetic testing information of a deceased consumer cannot be transferred based on a consent provided by the consumer while still alive. *See* Ariz. Rev. Stat § 12-2082(F). Rather, it can *only* be released to the deceased consumer's last healthcare decisionmaker and the personal representative of the consumer's estate or next of kin. Ariz. Rev. Stat § 12-2294(D).

      Also, Minnesota's Genetic Information Privacy Act forbids the sale or transfer of genetic information without the consumer's express consent. The law specifies that a direct-to-consumer genetic testing company must obtain "separate express consent" before each transfer or disclosure of the consumer's genetic data or biological sample to any person other than the company's vendor and service providers. Minn. Stat. §325F.995, subd. 2(a)(2)(ii). Under Minnesota's law, express consent means "a consumer's affirmative written response to a clear, meaningful, and prominent written notice," which may be presented and captured electronically. *Id*. § 325F.995, subd. 1(f).

[25] https://www.23andme.com/privacy/ (Emphasis in the original).

---

**COMPLAINT**        **PAGE 8**

Terms of Service and Privacy Statement upon their initial sign-up provides 23andMe with sufficient rights to sell the customer's biological material and/or their Genotype and Phenotype Data in the proposed sale, <u>23andMe must obtain express consent for the sale from all customers who signed up for the service prior to June 8, 2022</u>, because until this date, the company assured its clients in its Privacy Policy that "23andMe will not sell, lease, or rent your individual-level information to a third party for research purposes without your explicit consent."[26]

## VI. RESERVATION OF RIGHTS

The States reserve the right to assert any alternative causes of action, to amend this Complaint, and to pursue any additional claims.

## VII. PRAYER

WHEREFORE, the States respectfully request that the Court (a) enter a declaratory judgment as to the issues set forth in Count I above prior to any sale; (b) and enter any further relief to which the Court finds is just.

Dated: June 9, 2025,

*(Remainder of Page Intentionally Left Blank)*

---

[26] This assurance in 23andMe's privacy policy was removed on June 8, 2022, at the same time as the company added a special bankruptcy provision providing "If we are involved in a bankruptcy, merger, acquisition, reorganization, or sale of assets, your Personal Information may be accessed, sold or transferred as part of that transaction and this Privacy Statement will apply to your Personal Information as transferred to the new entity."

---

**COMPLAINT**                                                                                        **PAGE 9**

Respectfully Submitted,

/S/ ABIGAIL R. RYAN
ABIGAIL R. RYAN
BANKRUPTCY COUNSEL
NATIONAL ASSOCIATION OF ATTORNEYS GENERAL
1850 M Street NW, 12th Floor
Washington, DC 20036
Telephone: (202) 326-6000, Ext. 258
Email: aryan@naag.org

COUNSEL FOR THE FOLLOWING NAAG CLIENT STATES:

THE STATE OF ARIZONA, EX REL. KRISTIN K. MAYES, THE ATTORNEY GENERAL

STATE OF CONNECTICUT

DISTRICT OF COLUMBIA, OFFICE OF THE ATTORNEY GENERAL

STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS

OFFICE OF THE ILLINOIS ATTORNEY GENERAL

THE STATE OF KANSAS, EX REL. KRIS KOBACH

STATE OF LOUISIANA

STATE OF MAINE

MICHIGAN ATTORNEY GENERAL, EX REL. THE PEOPLE OF THE STATE OF MICHIGAN

NEW HAMPSHIRE OFFICE OF THE ATTORNEY GENERAL, CONSUMER PROTECTION DIVISION

NEW MEXICO DEPARTMENT OF JUSTICE

NEW YORK STATE ATTORNEY GENERAL'S OFFICE

STATE OF NORTH CAROLINA

STATE OF OKLAHOMA

THE STATE OF SOUTH CAROLINA EX REL. ALAN WILSON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF SOUTH CAROLINA

THE ATTORNEY GENERAL FOR THE STATE OF SOUTH DAKOTA

STATE OF UTAH, OFFICE OF THE UTAH ATTORNEY GENERAL

STATE OF VERMONT

THE COMMONWEALTH OF VIRGINIA, EX REL. JASON S. MIYARES, ATTORNEY GENERAL

THE STATE OF WASHINGTON

OFFICE OF THE WEST VIRGINIA ATTORNEY GENERAL

THE STATE OF WISCONSIN

FOR THE STATE OF COLORADO

/S/ ROBERT PADJEN
ROBERT PADJEN, NO. 14678CO
SENIOR ASSISTANT ATTORNEY GENERAL
COLORADO DEPARTMENT OF LAW
RALPH L. CARR COLORADO JUDICIAL CENTER
1300 Broadway, 8th Floor
Denver, Colorado 80203
Direct dial: 720-508-6346
E-mail: robert.padjen@coag.gov

FOR THE COMMONWEALTH OF KENTUCKY, EX REL. RUSSELL COLEMAN, ATTORNEY GENERAL

/S/ CHRISTOPHER D. HUNT
CHRISTOPHER D. HUNT (KY BAR NO. 91775)
ASSISTANT ATTORNEY GENERAL
KENTUCKY OFFICE OF THE ATTORNEY GENERAL
1024 Capital Center Drive, Suite 200
Frankfort, KY 40601
Tel: (502) 696-5691
ChrisD.Hunt@ky.gov

FOR THE STATE OF MINNESOTA
KEITH ELLISON ATTORNEY GENERAL OF MINNESOTA

/S/ DALILA Z. JORDAN
DALILA Z. JORDAN, ATTORNEY REG # 0403120
ASSISTANT ATTORNEY GENERAL
CONSUMER PROTECTION DIVISION
445 Minnesota Street, Suite 600
Saint Paul, Minnesota 55101
Telephone: (651) 300-7640
Email: Dalila.Jordan@ag.state.mn.us

COUNSEL FOR THE STATE OF MINNESOTA

---

| | |
|---|---|
| FOR THE STATE OF MISSOURI<br>ANDREW BAILEY, ATTORNEY GENERAL | FOR THE COMMONWEALTH OF<br>PENNSYLVANIA<br>OFFICE OF THE ATTORNEY GENERAL,<br>DAVID W. SUNDAY, JR., ATTORNEY GENERAL |

BY: */S/ CALEB LEWIS*
Caleb M. Lewis, Mo. Bar #61894
   Assistant Attorney General
Michael Schwalbert, Mo. Bar #63119
   Assistant Attorney General
Alison Esbeck, Mo. Bar. #58501
   Assistant Attorney General
Zachary Elam, Mo. Bar #76935
   Assistant Attorney General

Missouri Attorney General's Office
815 Olive Street Suite 200
St. Louis, MO 63101
(314) 340-7883
FAX: (314) 340-7981
Caleb.Lewis@ago.mo.gov
Michael.Schwalbert@ago.mo.gov
Alison.Esbeck@ago.mo.gov
Zachary.Elam@ago.mo.gov
*ATTORNEYS FOR THE OFFICE OF THE MISSOURI ATTORNEY GENERAL*

By: */s/Lauren A. Michaels*
Lauren A. Michaels
Deputy Attorney General
Pa I.D. No. 320686
Melissa L. Van Eck
Chief Deputy Attorney General Financial
Enforcement Section
Commonwealth Of Pennsylvania
Office Of Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, Pa 15222
Tel: (412) 235-9072
E-mail: lmichaels@attorneygeneral.gov

FOR THE STATE OF OREGON, DAN RAYFIELD ATTORNEY GENERAL OF OREGON

*/S/ JUSTIN D. LEONARD*
JUSTIN D. LEONARD, E.D. MO. D.C. # 033736OR
SENIOR ASSISTANT ATTORNEY GENERAL
OREGON DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4400
Email: Justin.Leonard@doj.oregon.gov

---

**COMPLAINT**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE 11**